IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SAMANTHA EDWARDS, Individually, and as
SPECIAL ADMINISTRATRIX of the ESTATE
of WILLIAM BOBBY WRAY EDWARDS, Deceased,
and ARLEIGH GRAYCE EDWARDS, Deceased; and as
PARENT and NEXT FRIEND for Peyton Hale, a Minor                        PLAINTIFF

v.                                     Case No. 4:19-cv-4018

ERIC JAMES CORNELL THOMAS
and MCELROY TRUCK LINES, INC.                                          DEFENDANTS

## **ORDER**

Before the Court is Defendants' Motion to Reconsider Denial of Motion for Stay. (ECF No. 55). Plaintiff filed a response. (ECF No. 66). The Court finds the matter ripe for consideration.

### **I. BACKGROUND**

This case arises from an automobile collision that occurred on August 2, 2018. Defendant Eric James Cornell Thomas ("Thomas") was driving a tractor trailer in the course and scope of his employment with Defendant McElroy Truck Lines, Inc. ("McElroy") when he collided with another vehicle. William Bobby Wray Edwards and Arleigh Grayce Edwards suffered fatal injuries and Peyton Hale suffered personal injuries. On February 11, 2019, Plaintiff filed this wrongful death and survival action, asserting separate claims of negligence against Defendants. McElroy has admitted vicarious liability in connection with the automobile collision.

On August 7, 2019, a criminal warrant was issued in the District Court of Howard County for the arrest of Thomas on two counts of negligent homicide, stemming from the August 2, 2018 collision. On December 16, 2019, Defendants moved for a stay of discovery and of this case's

trial setting pending the resolution of the parallel criminal charges against Thomas. On January 31, 2020, the Court denied that motion, largely on the basis that Defendants had not carried their burden of demonstrating that a parallel criminal matter was pending against Thomas.

On February 7, 2020, Defendants filed the instant motion, asking the Court to reconsider its order denying a stay. Defendants suggest that the Court's decision was largely based on a misinterpretation of Arkansas criminal law and that a stay is indeed proper. Plaintiff opposes the motion.

## II. DISCUSSION

The Court must first determine whether to reconsider its previous order. If so, the Court will then conduct its reconsidered analysis.

### A. Whether Reconsideration is Proper

The Federal Rules of Civil Procedure do not account for "motions to reconsider." The Eighth Circuit instructs that "motions to reconsider are 'nothing more than Rule 60(b) motions when directed at non-final orders.'" *Nelson v. Am. Home Assur. Co.*, 702 F.3d 1038, 1043 (8th Cir. 2012) (quoting *Elder–Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006)). The instant motion is directed at a non-final order. Thus, the Court will consider Defendants' motion as it would a Rule 60(b) motion.

Federal Rule of Civil Procedure 60(b) allows a district court to relieve a party from a judgment on the narrow grounds of mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud, misrepresentation, or misconduct by an opposing party; voidness; satisfaction of judgment; or "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). "Relief is appropriate when circumstances are so 'unusual or compelling'

that extraordinary relief is warranted, or when it 'offends justice' to deny such relief." *Bissonette v. Dooley*, No. CV 16-5120-JLV, 2017 WL 5499776, at *2 (D.S.D. Nov. 15, 2017).

The purpose of Rule 60(b) relief is not to give parties an opportunity to re-argue their case and it should not be used as a substitute for a timely appeal. *Fox v. Brewer*, 620 F.2d 177, 180 (8th Cir. 1980); *Nichols v. United States*, No. 4:00cr-00022-003-WRW, 2006 WL 3420303 (E.D. Ark. Nov. 28, 2006). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010). *Id.* Rule 60(b) motions are "viewed with disfavor," but in certain circumstances can "serve a useful, proper and necessary purpose in maintaining the integrity of the trial process." *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984).

The Court's January 31, 2020 order denied the requested stay in large part because there was no evidence that Thomas had been indicted and, thus, there was no evidence that a parallel criminal proceeding had been initiated against Thomas. Defendants suggest that this finding was erroneous because Thomas was charged with misdemeanor offenses, and criminal misdemeanor proceedings in Arkansas are generally initiated with the issuance of an arrest warrant, not an indictment. Thus, Defendants state that the Court mistakenly determined that criminal proceedings were not pending against Thomas when they, in fact, are. Defendants conclude that the Court's previous analysis, when accounting for the existence of the parallel criminal case, weighs in favor of issuing a stay. Defendants ask the Court to revisit its prior ruling and issue a stay.

Defendants are correct that, in Arkansas, criminal proceedings for felony offenses must be initiated with a charging instrument. *Watson v. State*, 358 Ark. 212, 222, 188 S.W.3d 921, 927 (2004). In contrast, criminal proceedings for misdemeanor offenses can be initiated with the

issuance of an affidavit for an arrest warrant. *Id.* Thus, the Court agrees that if Thomas faces misdemeanor charges, criminal proceedings were initiated against him on August 7, 2019, the day the arrest warrant was issued.

The Arkansas negligent homicide statute contemplates two types of the offense: one a felony and the other a misdemeanor. *Compare* Ark. Code Ann. § 5-10-105(a)(2) ("A person who violates subdivision (a)(1) of this section upon conviction is guilty of a Class B felony."), *with* Ark. Code Ann. § 5-10-105(b)(2) ("A person who violates subdivision (b)(1) of this section upon conviction is guilty of a Class A misdemeanor."). The Court previously ruled as it did because it lacked information to determine whether Thomas was accused of felony or misdemeanor negligent homicide. In support of their motion to stay, Defendants offered the arrest warrant for Thomas and the probable cause affidavit. (ECF Nos. 24-1, 24-2). The arrest warrant indicates that Thomas was wanted for "Negligent Homicide," and the probable cause affidavit indicates that he was wanted for two counts of negligent homicide, in violation of Ark. Code Ann. § 5-10-105.

Although it was clear Thomas was wanted for negligent homicide, the Court could not determine whether he was wanted for the felony or misdemeanor version of the offense.[1] Thus, the Court could not tell whether criminal proceedings had been initiated against Thomas by the issuance of the arrest warrant. The movant for a stay must show that a stay is proper and in recognition of that, the Court was unwilling to draw the inference in Defendants' favor that Thomas faces misdemeanor charges rather than felony ones.

Defendants now clarify that Thomas faces misdemeanor charges. Plaintiff's response does not dispute that assertion. Defendants also provide the Court with additional evidence showing that criminal proceedings are indeed underway against Thomas, including a copy of the docket

---

[1] Defendants' brief made mention of ongoing criminal proceedings but there was no verifying evidence of this in the record at that time.

sheet from his criminal case and correspondence from his criminal lawyer to the state court, entering not-guilty pleas on his behalf and requesting a trial setting. (ECF Nos. 55-1, 55-3). Plaintiff does not argue that the Court should decline to reconsider its prior order based on this evidence and instead focuses her efforts on why, upon reconsideration, the Court should maintain its previous ruling denying a stay.

Ultimately, the Court agrees that its prior order denying a stay was based on a mistake of fact: that Thomas is not presently facing a criminal proceeding. It is now clear that Thomas faces a parallel criminal proceeding that was initiated on August 2, 2019, when the arrest warrant was issued. Therefore, Defendants' motion to reconsider serves a valid purpose: the correction of a manifest error of fact. *Arnold*, 627 F.3d at 721. In the absence of any argument otherwise, the Court will reconsider its prior order, as doing so will "serve a useful, proper and necessary purpose in maintaining the integrity of the trial process." *Rosebud*, 733 F.2d at 515.

**B. Stay of Discovery Pending Resolution of Parallel Criminal Matter**

The Court will now revisit its prior analysis regarding whether to stay discovery in this case pending the resolution of the parallel criminal proceeding against Thomas. As before, the Court applies the test articulated by the Ninth Circuit in *Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995).[2] That test involves consideration of the following five factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

---

[2] The Court's prior order detailed the requisite showing that must be made to obtain a civil stay pending the resolution of a parallel criminal matter, as well as the reasons why the Court utilized the *Keating* factors.

*Id.* at 325. The Court will address each factor in turn.[3]

**1. Plaintiff's Interest**

This factor concerns "the interest of the plaintiff[] in proceeding expeditiously with this litigation or any particular aspect of it . . . and the potential prejudice to plaintiff[] of a delay." *Young v. W. Memphis Police Dep't*, No. 3:11-cv-0161-BRW, 2011 WL 6033060, at *1 (E.D. Ark. Dec. 5, 2011).

Plaintiff has "a legitimate interest in the expeditious resolution of [her] case." *Ruszczyk as Tr. for Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 760 (D. Minn. 2018). The Court previously indicated that Plaintiff stood to suffer undue prejudice from a stay because of the uncertainty of when, if ever, an indictment might issue against Thomas. That concern has now been alleviated.

However, Plaintiff would nonetheless suffer prejudice from a stay of discovery in this case pending the resolution of the criminal proceeding against Thomas. Defendants suggest that the stay will not be overly long, pointing out that Thomas has requested a trial in the criminal case, which will hopefully occur in the coming months. Even if so, this assumes that Thomas's criminal case will end when the charges against him are dismissed, he is found not guilty, or he is sentenced following a guilty plea or a guilty verdict. That assumption does not account for the possibility of "mistrials or hung juries, as well as direct appeal and possible postconviction petitions." *Id.* Granted, any such delays are speculative at this point, but nonetheless, the "uncertain timeline of the requested stay hinders Plaintiff's interest in moving this lawsuit forward." *Id.*

On the other hand, a stay of discovery in this case would also work in Plaintiff's favor in certain ways. "[T]he resolution of the [c]riminal [c]ase may reduce the scope of discovery in the

---

[3] The parties have incorporated by reference their arguments made in the briefing of the underlying motion to stay. Although those arguments will not be recounted in the following discussion, the Court has reviewed and taken them into consideration.

civil case and the evidence gathered during the criminal prosecution can later be used in the civil action." *Id.* Given the factual overlap between this case and the criminal case, the Court is unconcerned that evidence will be lost or made unavailable if discovery in this case is stayed. Plus, allowing the criminal case to proceed first would also give Plaintiff the benefit of the transcripts and rulings in the criminal action. *Id.* at 764.

Moreover, any burden a stay might impose on Plaintiff can be tempered by requiring the parties to keep the Court informed periodically as to the state criminal proceeding. This would also give the parties an opportunity to address the propriety of continuing the stay if the criminal matter is not resolved after the impending trial. *Id.* at 767. Accordingly, the Court finds that this factor weighs against a stay, but only slightly.

### 2. Burden on Defendants

Next, the Court must consider "the burden which any particular aspect of the proceedings may impose on defendants." *Young*, 2011 WL 6033060, at *1.

The Fifth Amendment ordinarily does not mandate a stay of civil proceedings when related criminal proceedings are pending. *Koester v. Am. Republic Invs., Inc.*, 11 F.3d 818, 823 (8th Cir. 1993). However, courts may choose to stay a civil proceeding "pending the completion of parallel criminal prosecutions when the interests of justice seem[] to require such action." *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970). "[T]he strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter. Under such circumstances, denying a stay might undermine a defendant's Fifth Amendment privilege against self-incrimination." *Kozlov v. Associated Wholesale Grocers, Inc.*, No. 4:10-cv-03211, 2011 WL 3320972, at *2 (D. Neb. Aug. 2, 2011) (internal quotation marks omitted) (internal citation omitted).

7

As stated above, the Court finds that Thomas is currently facing parallel civil and criminal proceedings such "that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." *Koester*, 11 F.3d at 823. Indeed, Thomas faces serious charges of negligent homicide for the same conduct encompassed in claim one of Plaintiff's complaint. Plaintiff is correct that there is no constitutional right that would protect Thomas from being forced to choose between fully participating in civil discovery and asserting his Fifth Amendment privilege. As noted above, however, the Court may nonetheless choose to stay civil discovery pending completion of the parallel criminal case if the interests of justice so require.

Defendants state that, on advice of his criminal counsel, Thomas will invoke his Fifth Amendment privilege if he is required to participate in further discovery in this case. Plaintiff will likely attempt to use Thomas's privilege invocation against him at trial. *S.E.C. v. Brown*, 658 F.3d 858, 863 (8th Cir. 2011) ("The Fifth Amendment permits an adverse inference when the privilege against self-incrimination is claimed by a party in a civil case."). "Although this is permitted by the law, 'the question of whether it is fair does not yield the same answer in every case.'" *Ruszczyk*, 349 F. Supp. 3d at 762 (quoting *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008)).

In this case, absent a stay, Thomas would face the choice of fully participating in civil discovery and potentially incriminating himself in the criminal case or invoking his Fifth Amendment privilege and allowing a civil jury to possibly draw negative inferences against him. If discovery is not deferred, it might undermine Thomas's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Arkansas's applicable rules of criminal procedure, expose the basis of the defense to the prosecution in advance of the criminal

trial, or otherwise prejudice the case. Thus, the circumstances of this case call for a stay of discovery as it relates to Thomas, which would enable him to eventually defend this case without fear of subsequent prosecution. However, the analysis does not end there.

Defendants also ask for discovery to be stayed as to McElroy because it has admitted vicarious liability and contends that its defenses rest almost entirely on the testimony of Thomas. Without Thomas, Defendants contend that McElroy will be hamstrung in its ability to participate in discovery and defend itself. Plaintiff does not appear to dispute that McElroy's defenses on the negligence claim against Thomas rest largely on Thomas's testimony. However, Plaintiffs argue that they should be allowed to conduct discovery with McElroy as to the negligence claim asserted against McElroy. Plaintiffs contend that that claim has nothing to do with the criminal case against Thomas and that the direct liability claim against McElroy has no bearing on what Thomas did or did not do.

The Court agrees with Defendants that, as it relates to Plaintiff's negligence claim against Thomas, McElroy's defenses largely rest on Thomas's testimony. If Thomas invokes his Fifth Amendment privilege, McElroy cannot access the information known to Thomas. Moreover, McElroy has no control over Thomas's Fifth Amendment invocations, which burdens McElroy's ability to engage in discovery and defend itself. *Id.*

Moreover, if McElroy participates in other liability discovery during the stay, that discovery "may well need to be re-spun following the outcome of [Thomas's] criminal trial to gather information inaccessible via Fifth Amendment invocations and to explore anew previous discovery in light of the criminal case's outcome." *Id.* at 765. Thus, the circumstances of this case call for a stay of all liability discovery as to McElroy, as well.

Accordingly, the Court finds that this factor weighs in favor of a stay.

### 3. The Court's Interest

The Court must also consider "the convenience of the court in the management of its cases, and the efficient use of judicial resources." *Young*, No. 3:11-cv-0161 BRW, 2011 WL 6033060, at *1.

The Court recognizes its "responsibility to keep its calendar moving to provide litigants expeditious determination of their cases." *White v. Mapco Gas Prod., Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987). Indeed, courts have "a strong interest in keeping litigation moving to conclusion without *unnecessary* delay." *Ruszczyk*, 349 F. Supp. 3d at 763 (emphasis in original). On the other hand, stays of civil proceedings pending the resolution of a parallel criminal case can "promote efficiency and avoid duplication as this Court and the parties would have the benefit of the transcripts and rulings in the criminal action." *Id.* Moreover, "the resolution of the criminal case might reduce the scope of discovery in th[is] civil case or otherwise simplify the issues." *Id.*

A stay here would conserve scarce judicial resources. Given the substantial overlap between Thomas's prosecution and the civil claims, the discovery produced in the criminal proceeding will likely be relevant to and discoverable in this case. The outcome of the prosecution might also narrow the issues and simplify the parties' positions in this matter. A stay would also avoid the possibility that limited liability discovery conducted during the stay would have to be redone after Thomas's criminal trial. "Moreover, to reduce further the burden of a stay a court can require the parties to advise the Court on any development in the criminal case." *Id.* at 764 (internal quotation marks and alteration omitted). Accordingly, the Court finds that this factor weighs in favor of a stay.

### 4. Interest of Non-Parties

Now the Court must consider "the interests of persons not parties to the civil litigation." *See Young*, 2011 WL 6033060, at *1.

This factor bears little weight in the analysis. Non-party family members of those killed and injured in the car wreck have an interest in the conclusion of this case. Conversely, Thomas's family has an interest in seeing his criminal case proceed. Accordingly, this factor is neutral.

### 5. Public Interest

Finally, the Court must consider "the interest of the public in the pending civil and criminal litigation." *Id.* at *1.

Even though this case is not a class action touching the public at large, the Court finds the public has an interest in the conclusion of this case. If Plaintiff is successful, this case could deter similar, future behavior. However, the Court finds that the public has a stronger interest in the criminal prosecution of individuals charged with negligent homicide, and thus the public has a stronger interest in the conclusion of the criminal case. The Court finds that the public's interest in the resolution of the criminal case outweighs the public's interest in the resolution of this case. *See Combs v. Nelson*, No. 4:09-cv-0329-SWW, 2009 WL 2044413, at *2 (E.D. Ark. July 10, 2009) ("If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it."). Accordingly, the Court finds that this factor weighs in favor of a stay.

### 6. Conclusion

In sum, the Court finds that the *Keating* factors, viewed in the totality, favor the issuance of a stay of liability discovery pending the resolution of Thomas's criminal prosecution. Discovery should be stayed as it relates to issues of liability.

The Court notes that Plaintiff alternatively asks that the Court allow discovery to proceed

11

on damages.  Defendant's brief of the underlying motion to stay concedes that this might be a workable solution.  The Court agrees that allowing damages-related discovery to proceed during the stay of liability discovery would allow Plaintiff to move her case forward.  The Court will allow the parties to conduct discovery on damages during the stay.

Finally, the Court notes that Defendants' underlying motion to stay also asks for the trial setting in this case to be stayed pending the outcome of the criminal case.  However, since that time, the Court lifted the trial setting and vacated all pretrial deadlines.  A new Final Scheduling Order has not been issued with new dates.  In light of this order, setting a new trial date and attendant pretrial deadlines might repeatedly prove unworkable if the criminal case has not yet concluded by the new deadlines, leaving the parties unable to conduct liability discovery in this case.  Thus, the Court finds that judicial resources will be best served by staying the trial of this matter.  *Ruszczyk*, 349 F. Supp. 3d at 767 (D. Minn. 2018) (staying case pending resolution of parallel criminal matter).  The parties shall move to lift this general stay once the criminal trial is resolved via dismissal, a not guilty verdict, or sentencing following a guilty plea or guilty verdict.

### III.  CONCLUSION

For the above-discussed reasons, the Court finds that Defendants' Motion to Reconsider Denial of Motion for Stay (ECF No. 55) should be and hereby is **GRANTED**.

The Court hereby enters a limited **STAY** of discovery in this case pending the ultimate resolution of the state court proceeding, Case Number CR-19-1137, against Thomas.  The parties shall not conduct liability discovery during the duration of this stay.  The parties may, however, conduct discovery on damages during the stay.

The trial of this matter will also be stayed until Thomas's criminal trial is resolved via dismissal, a not guilty verdict, or sentencing following a guilty plea or guilty verdict.  The parties

12

are **ORDERED** to move for entry of a new Final Scheduling Order within ten days of any of those occurrences.

Furthermore, Defendants are **ORDERED** to file a status update with the Court **every sixty days following the entry of this order and within ten days after the entry of a plea or return of a verdict in Thomas's criminal case**. Each update should inform the Court of the status of the criminal case, including relevant developments since the previous update and any upcoming deadlines.

**IT IS SO ORDERED**, this 24th day of February, 2020.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge