IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SAMANTHA EDWARDS, Individually, and as
SPECIAL ADMINISTRATRIX of the ESTATE
of WILLIAM BOBBY WRAY EDWARDS, Deceased,
and ARLEIGH GRAYCE EDWARDS, Deceased; and as
PARENT and NEXT FRIEND for Peyton Hale, a Minor                              PLAINTIFF


v.                                            Case No. 4:19-cv-4018


ERIC JAMES CORNELL THOMAS
and MCELROY TRUCK LINES, INC.                                              DEFENDANTS

**ORDER**

Before the Court is Plaintiff's Motion for Partial Summary Judgment With Respect to Comparative Fault and Non-Party Fault Related to Child Safety Restraint Nonuse. (ECF No. 60). Defendants have responded. (ECF No. 73). Plaintiff has replied. (ECF No. 76). The Court finds the matter ripe for consideration.

**I.  BACKGROUND**

This case arises from an automobile collision that occurred on August 2, 2018. Defendant Eric James Cornell Thomas ("Thomas") was driving a tractor trailer in the course and scope of his employment with Defendant McElroy Truck Lines, Inc. ("McElroy"). Thomas drove through a stop sign and collided with a vehicle driven by William Bobby Wray Edwards ("William"), who suffered fatal injuries. Arleigh Grayce Edwards ("Arleigh"), a two-year old passenger in the Edwards vehicle, also suffered fatal injuries and Peyton Hale, a teenage passenger in the Edwards vehicle, suffered personal injuries. On February 11, 2019, Plaintiff filed this wrongful death and survival action, asserting separate claims of negligence against Defendants.

Defendants admitted in their answer that Thomas caused the collision and that McElroy is

vicariously liable for any injuries caused by Thomas's negligence. However, Defendants assert the affirmative defense of apportionment of fault, contending that William failed to place and maintain Arleigh in a suitable child safety seat or restraint system, which was at least partially the proximate cause of her death.

On February 10, 2020, Plaintiff filed the instant motion for partial summary judgment, arguing that Defendants' apportionment defense should be barred because Arkansas law prohibits parties from offering the failure to provide or use a child safety restraint as evidence of comparative or contributory negligence in civil negligence actions. Defendants oppose the motion.

## II. STANDARD

The standard for summary judgment is well established. A party may seek summary judgment on a claim, a defense, or "part of [a] claim or defense." Fed. R. Civ. P. 56(a). When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that

it is entitled to judgment as a matter of law.  *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III.  DISCUSSION

As a preliminary matter, the Court must first address the parties' statements of facts to determine whether the instant summary judgment motion is properly supported.  Then, if necessary, the Court will discuss the statutory framework underlying the instant motion and turn to the merits of the instant motion.

#### A. Parties' Statements of Facts

An initial question arises as to whether the instant motion is properly supported by cites to the record.  As stated above, a party seeking summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The movant establishes that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  Failure to cite to record evidence supporting the movant's asserted facts is an independent ground for denial of a summary judgment motion.  *See Scadden v. Nw. Iowa Hosp. Corp.*, 747 F. Supp. 2d 1130, 1132 (N.D. Iowa 2010) (denying a summary judgment motion for failure to support the motion with cites to record evidence in support of the movant's asserted facts).

Although the instant motion concerns a question of law, Plaintiff must nonetheless establish that the material facts underlying the motion are all undisputed.  Plaintiff's statement of undisputed facts contains no citations to record evidence, other than various numbered allegations

3

made in her complaint and numbered admissions made in Defendants' answer.

Generally, admissions in pleadings are binding on the parties unless withdrawn or amended. *Mo. Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990). Thus, "even if the post-pleading evidence conflicts with the . . . pleadings, admissions in the pleadings are binding on the parties and may support summary judgment." *Id.* at 1315. Thus, Plaintiff's allegations are not by themselves summary judgment evidence. However, Defendants' admissions of certain allegations in their answer will suffice as summary judgment evidence. *See NuTech Seed, LLC v. Roup*, 212 F. Supp. 3d 783, 787 (S.D. Iowa 2015) (deeming admitted for summary judgment purposes all allegations that were admitted in the defendant's answer); *Jorgensen v. Schneider*, No. CIV. 10-5021-JLV, 2012 WL 13173045, at *2 (D.S.D. Sept. 27, 2012) (forming the undisputed material facts from, *inter alia*, the answer's admission of certain allegations made in the complaint).

Defendants' answer admits that Thomas negligently caused a collision with the Edwards' vehicle, and that McElroy is vicariously liable for any injuries caused by Thomas's negligence. Defendants' answer also admits that William and Arleigh died. Thus, Plaintiff's motion is accompanied by a supported statement of undisputed facts and, as such, is properly before the Court for consideration.[1] With that settled, the Court will discuss the statutory framework underlying the instant motion and then move to the merits of the motion.

**B. Relevant Statutory Framework**

Before delving into the parties' arguments, it would be helpful to discuss the statutory

---

[1] The only fact relevant to the instant motion that Plaintiff fails to establish is that Arleigh was unrestrained at the time of the collision. However, Defendants make that assertion in what is styled as their Response to Plaintiff's Statement of Facts. Defendants also provide expert deposition testimony that Arleigh was unrestrained at the time of the accident. Plaintiff's reply brief does not attempt to controvert that assertion or Defendants' supporting record evidence, so to the extent that consideration of this fact is required for purposes of ruling on the instant motion, the Court considers the fact to be undisputed.

framework at issue in the instant motion. There is no dispute that the Court, currently sitting in diversity, must apply the substantive law of Arkansas, the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The instant motion concerns various provisions of Arkansas's Child Passenger Protection Act ("CPPA"), codified at Ark. Code Ann. § 27-34-101 *et seq*.

"[I]n recognition of the problems, including death and serious injury, associated with unrestrained children in motor vehicles," the Arkansas legislature passed the CPPA "to encourage and promote the use of child passenger safety seats." Ark. Code Ann § 27-34-102. With limited exceptions that are not applicable here, the CPPA imposes a duty on motor vehicle operators in Arkansas to protect any child passenger under the age of fifteen by securing and maintaining the child in a child passenger restraint system that meets applicable federal safety standards. Ark. Code Ann. § 27-34-104(a). The CPPA requires the use of different restraint systems depending on the age and weight of the child. Any child less than six years of age and who weighs less than sixty pounds must "be restrained in a child passenger safety seat properly secured to the vehicle." Ark. Code Ann. § 27-34-104(b). Any child who is at least six years old or at least sixty pounds in weight may instead be buckled in with "a safety belt properly secured to the vehicle." Ark. Code Ann. § 27-34-104(c). The CPPA provides that anyone who violates its provisions will, upon conviction, be subject to fines. Ark. Code Ann. § 27-34-103.

The CPPA also provides inadmissibility standards for a failure to use a child safety seat. The CPPA states, in relevant part, that "[t]he failure to provide or use a child passenger safety seat shall not be considered, under any circumstances, as evidence of comparative or contributory negligence, nor shall failure be admissible as evidence in the trial of any civil action with regard to negligence." Ark. Code Ann. § 27-34-106(a). This provision is the parties' primary fighting point in the instant motion.

**C. Defendants' Allocation-of-Fault Defense**

As discussed above, Defendants want to argue at trial that William was, at least partially, the proximate cause of Arleigh's death because he failed to secure and maintain her in a suitable child safety seat or restraint system at the time of the collision. Plaintiffs contend that they are entitled to summary judgment on this defense as a matter of law because section 106(a) of the CPPA prohibits parties from offering an individual's failure to provide or use child restraints as evidence of comparative or contributory negligence in civil negligence cases.

Defendants disagree, offering two arguments in response. First, they argue that section 106(a) is irrelevant for purposes of the instant motion because it only prohibits them from arguing that William was negligent for failing to use a child safety seat, while nothing prevents them from arguing at trial that William was negligent for failing to place Arleigh in some other type of restraint system. They argue, alternatively, that section 106(a) should be disregarded altogether—allowing them to argue for apportionment of fault based on William's failure to restrain Arleigh in a child safety seat—because section 106(a) violates the separation-of-powers doctrine and Amendment 80 to the Arkansas Constitution, and as such, is an unconstitutional legislative incursion into the Arkansas Supreme Court's rulemaking power. The Court will separately address these arguments.

**1. Whether Section 106(a) Prohibits Defendants' Entire Allocation Defense**

Defendants argue that the Court need not address whether section 106(a) is constitutional because that statute does not foreclose all evidence of failure to secure a child in a safety restraint system. They state that section 104(a) of the CPPA requires that all children under the age of fifteen who ride in vehicles must be secured by some type of child restraint system. Ark. Code Ann. § 27-34-104(a). They seize on the language of section 106(a), which expressly states, "[t]he failure to provide or use a child passenger *safety seat* shall not be considered, under any

6

circumstances, as evidence of comparative or contributory negligence, nor shall failure be admissible as evidence in the trial of any civil action with regard to negligence." Ark. Code Ann. § 27-34-106(a) (emphasis added). Defendants contend that section 106(a)'s plain language only bars evidence of the non-use of a child passenger safety seat, so regardless of whether section 106(a) is constitutional, nothing prohibits them from arguing that William should have secured Arleigh in another type of restraint system contemplated by section 104(a), such as an ordinary seatbelt. Plaintiff's reply brief addresses this argument glancingly, arguing that Defendants have no proof that Arleigh would have survived the accident had she been seatbelted in, as opposed to secured in a child safety seat, and that a failure to utilize a seatbelt is inadmissible absent any such proof.

As previously discussed above, the Arkansas legislature passed the CPPA "to encourage and promote the use of child passenger safety seats." Ark. Code Ann § 27-34-102. To accomplish this, the CPPA imposes a duty on any motor vehicle operator in Arkansas to secure and maintain any child passenger under the age of fifteen in a child passenger restraint system that meets applicable federal safety standards. Ark. Code Ann. § 27-34-104(a). Any child passenger younger than six years old and who weighs less than sixty pounds must "be restrained in a child passenger safety seat properly secured to the vehicle." Ark. Code Ann. § 27-34-104(b). Any child who is at least six years old or at least sixty pounds in weight may be secured with a seatbelt instead.[2] Ark. Code Ann. § 27-34-104(c).

Defendants are correct that section 106(a)'s plain language only prohibits the non-use of a child seat as evidence of comparative or contributory fault. Section 106(a) makes no mention of

---

[2] As the Court reads it, nothing in section 104(a) prohibits a driver from choosing to use a child safety seat to secure a child who is at least six years old or at least sixty pounds in weight. Rather, the statute provides only that a seatbelt "shall be sufficient to meet the requirements of [section 104(a)]" for children who are at least six years old or sixty pounds in weight. Ark. Code Ann. § 27-34-104(c).

7

other restraint systems, like seatbelts. Defendants are also correct that section 104(a) sets out a duty to secure all child passengers under age fifteen using some form of safety restraint system. However, section 104(a) cannot be read in isolation. When section 104(a) is read in conjunction with the remainder of section 104, it becomes clear that 104(a)'s general duty to secure children is delineated in sections 104(b-c), which provide specific methods of restraint systems that must be used, depending on the child's age and weight.

It is undisputed that Arleigh was two years old at the time of the accident. Thus, unless her weight exceeded sixty pounds at that time, the CPPA imposed on William a specific duty to secure Arleigh in a child passenger safety seat. Ark. Code Ann. § 27-34-104(b). If Arleigh weighed less than sixty pounds, securing her with any restraint system other than a child seat would violate Arkansas law. To the Court's knowledge, the parties have not pointed to any record evidence establishing Arleigh's weight at the time of the accident. Thus, the Court is without sufficient information to determine whether section 106(a) completely forecloses Defendants' apportionment defense because the record does not reflect whether Arleigh's weight exceeded sixty pounds at the time of the accident. Thus, a question of fact remains as to that issue and the Court will deny the instant motion to the extent that it seeks to prevent Defendants from arguing that William should have secured Arleigh with a seatbelt or some other type of restraint system other than a child seat.

However, if subsequent evidence shows that Arleigh weighed less than sixty pounds at the time of the accident, the Court is unlikely to let Defendants argue at trial for apportionment of fault pursuant to section 104(a) of the CPPA. To do so would allow a defense that amounts to arguing that William was negligent because he failed to violate Arkansas law by securing Arleigh in a way other than what the CPPA expressly mandated for her age and weight. Defendants suggest that the CPPA implicitly adopts a "some-is-better-than-none" policy instead of requiring strict

8

compliance because, if a driver is found to have violated the CPPA, a judge may reduce the imposed fine for that offense if evidence shows that the driver secured the child in some form of child passenger restraint system other than what the CPPA requires for the child's age and weight. *See* Ark. Code Ann. § 27-34-103(b). Even so, this does not change the fact that, if Arleigh weighed less than sixty pounds, William would have violated the CPPA by securing her in any system other than a child safety seat. The Court is uninclined to allow an apportionment defense that is based on William's failure to take an action that would have violated Arkansas law, no matter how it is couched.

### 2. Whether Section 106(a) is Enforceable

This brings the Court to the question of whether section 106(a) of the CPPA violates the Arkansas Constitution, and accordingly, whether it may be used to bar Defendants from offering evidence at trial of William's failure to secure Arleigh in a child safety seat for purposes of arguing for comparative fault or contributory negligence.

Plaintiff argues that section 106(a) clearly prohibits the allocation-of-fault defense that Defendants want to present. She states that, in *Potts v. Benjamin*, the Eighth Circuit affirmed an Arkansas federal district court's use of section 106(a) to exclude the non-use of a child safety seat as evidence of comparative or contributory negligence. 882 F.2d 1320, 1324 (8th Cir. 1989). In *Potts*, the district court, sitting in diversity, applied section 106(a) to exclude testimony that the plaintiff had not placed her children in child safety seats prior to a motor vehicle collision. *Id.* The defendant later appealed that ruling pursuant to the *Erie* doctrine,[3] arguing that the district court erred in applying section 106(a) because it was not a substantive rule of the forum state that the federal court was bound to apply but, rather, was a procedural rule that is not binding in

---

[3] The *Erie* doctrine instructs that federal courts sitting in diversity are obliged to apply federal procedural law and the substantive law of the forum state. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996).

diversity suits. *Id. Potts* affirmed the lower court's decision, reasoning that section 106(a) was a rule of Arkansas substantive law that the district court rightly determined under *Erie* that it was obliged to apply in diversity cases. *Id.* In this case, Plaintiff urges the Court to reach the same conclusion: that it is bound to apply section 106(a) as a substantive rule of Arkansas law and, consequently, Defendants' allocation-of-fault defense should be barred.

Defendants respond that section 106(a) is an unconstitutional legislative incursion into the Arkansas Supreme Court's rulemaking power and, as such, is unenforceable. Defendants contend that *Potts* was decided in 1989, when existing Arkansas caselaw held that the Arkansas judiciary and legislature shared judicial rulemaking authority. *See Jackson v. Ozment*, 283 Ark. 100, 101-03, 671 S.W.2d 736, 738 (1984) (holding that the Arkansas Constitution did not give the Arkansas Supreme Court the exclusive authority to make rules of court procedure). Defendants state that, since that time, the Arkansas Supreme Court overruled that line of cases and subsequently held that Amendment 80 to the Arkansas Constitution gives the Arkansas Supreme Court the exclusive power to set rules of pleading, practice, and procedure for Arkansas state courts, and that both direct and indirect intrusions into that domain by the state legislature are unconstitutional. *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, at 8, 308 S.W.3d 135, 141. Defendants conclude that section 106(a) of the CPPA offends the principal of separation of powers and intrudes into the judicial rulemaking domain by limiting what is admissible evidence, and as such, it is unconstitutional and cannot be applied by the Court here. Although Defendants do not formally move the Court to declare section 106(a) unconstitutional, they are clearly challenging the constitutionality of the statute. They repeatedly refer to section 106(a) as unconstitutional and ask the Court to disregard the statute on that basis. Thus, as the Court reads the parties' briefing, a ruling in Defendants' favor on this issue would necessitate a finding that section 106(a) is indeed

unconstitutional.[4]

In reply, Plaintiff argues that notwithstanding Amendment 80, section 106(a) is still a rule of substantive law pursuant to the Eighth Circuit's *Potts* opinion, and thus, section 106(a) is not a legislative incursion into the judiciary's rulemaking domain over the state court rules of pleading, practice, and procedure. Plaintiff argues that section 106(a) does not limit the admissibility of evidence but, rather, establishes that the failure to use a child safety seat is, as a matter of substantive law, not negligence, so such a failure cannot be offered as evidence for purposes of contributory negligence or comparative fault. Plaintiff also argues that the Eighth Circuit's *Potts* opinion is still controlling because the *Erie* analysis conducted in that case is the same analysis undertaken to determine whether a law violates Amendment 80.

The Court agrees with the parties that, following the adoption of Amendment 80 to the Arkansas Constitution, a clear separation-of-powers demarcation exists, limiting the power of the legislature. The Arkansas Supreme Court now has the exclusive power and duty to enact rules of pleading, practice, and procedure, and the legislature cannot encroach on that by enacting "procedural" rules. *Johnson*, 2009 Ark. 241, at 8, 308 S.W.3d 135, 141; *see also* Ark. Const. art. 4, § 2 ("No person or collection of persons, being of one of these [branches of government], shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted."). Thus, the question becomes whether section 106(a) is a substantive or procedural rule of law.

Law is substantive when it is "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of the parties." *Johnson*, 2009 Ark. 241, at 8, 308 S.W.3d at 141 Procedural law is defined as "[t]he rules that prescribe the steps for having a right or duty judicially

---

[4] The Court sees no other basis for ignoring an otherwise valid and applicable statute, which is the result Defendants seek here.

enforced, as opposed to the law that defines the specific rights or duties themselves." *Summerville v. Thrower*, 369 Ark. 231, 237, 253 S.W.3d 415, 420 (2007) (citing Black's Law Dictionary 1221 (7th ed. 1999)). It is undisputed that in Arkansas, rules of evidence are "rules of pleading, practice and procedure." *Johnson*, 2009 Ark. 241, at 10, 308 S.W.3d at 142. Accordingly, if a statute establishes a rule of evidence, it violates the separation-of-powers doctrine and is unconstitutional. *Mendoza v. WIS Int'l, Inc.*, 2016 Ark. 157, 5, 490 S.W.3d 298, 301 (2016).

Defendants argue that section 106(a) is procedural because it establishes that the failure to provide or use a child safety seat cannot be admitted into evidence at trial for purposes of arguing for contributory negligence or comparative fault, or admitted into evidence at all in a civil trial with regard to negligence. Plaintiffs argue that the statute is substantive and cite primarily to two cases in support of their position: the *Potts* opinion, and *Mendoza v. WIS Int'l, Inc.*, a case in which the Arkansas Supreme Court determined that Ark. Code Ann. § 27-37-703 violated Amendment 80 to the Arkansas Constitution by limiting the admissibility of the non-use of seatbelts as evidence in civil actions. *Id.* at 9, 490 S.W.3d at 303. The Court has carefully reviewed both cases and is not persuaded that either supports Plaintiff's position.

In *Potts*, the Eighth Circuit conducted an *Erie* analysis to determine that section 106(a) was properly applied by a federal court sitting in diversity to exclude evidence of the nonuse of a child safety restraint system. 882 F.2d at 1324. The Eighth Circuit relied on no Arkansas caselaw to form this conclusion and appeared to instead make an *Erie*-educated guess that the statute is a substantive rule of law. *See id.* ("[Section 106(a)] seems to us to be a classic example of the type of substantive rule of law binding upon a federal court in a diversity case.").

The parties dispute whether the terms "substantive" and "procedural," as used in *Potts*' *Erie* analysis, hold the same meaning as those same terms as they are used in a separation-of-powers analysis for purposes of Amendment 80 to the Arkansas Constitution. Plaintiff argues that

12

there is no distinction and that "substantive" means substantive, regardless of whether the analysis was performed under *Erie* or the separation-of-powers doctrine. Defendants argue that an *Erie* analysis is different from a separation-of-powers analysis, so *Potts* cannot be read to definitively establish that section 106(a) is "substantive" for purposes of a separation-of-powers analysis because, under that analysis, any statute that conflicts with or alters the court's procedural rules is unconstitutional. *See Johnson*, 2009 Ark., at 8, 308 S.W.3d at 141. However, neither party cites Arkansas state precedent speaking directly on the issue.

The Court does not find *Mendoza* to be determinative of the issue, either. As stated above, *Mendoza* decided whether a separate statute, Ark. Code Ann. § 27-37-703, violated Amendment 80 to the Arkansas Constitution by limiting the admissibility of a party's non-use of a seatbelt as evidence in civil actions. *Mendoza*, 2016 Ark. at 9, 490 S.W.3d at 303. The *Mendoza* plaintiff argued that the statute was constitutional because it was a substantive rule of law, and the plaintiff relied heavily on *Potts* as analogous caselaw.[5] *Id.* The Arkansas Supreme Court rejected that argument, finding that Ark. Code Ann. § 27-37-703 was a legislative attempt to dictate court procedure, and thus, was unconstitutional. *Id.* at 9-10, 490 S.W.3d at 303-04.

Plaintiff states that *Mendoza* distinguished the language of Ark. Code Ann. § 27-37-703 from that of Ark. Code Ann. § 27-34-106(a). Plaintiff contends that *Mendoza* explained that Ark. Code Ann. § 27-37-703 is a statement of procedural law and that Ark. Code Ann. § 27-34-106(a) is a statement of substantive law because of the difference in wording between the two statutes.

The Court disagrees with that assessment. The plaintiff in *Mendoza* relied heavily on the Eighth Circuit's *Potts* opinion, so the Arkansas Supreme Court addressed the opinion briefly,

---

[5] The plaintiff also argued alternatively that Arkansas Rule of Evidence 402 specifically empowers the state legislature to determine the relevance of evidence by statute and that the legislature properly exercised that power when enacting the statute at issue. *Id.* at 7, 409 S.W.3d at 302. The Arkansas Supreme Court rejected that argument, holding that the legislature could not encroach on the judiciary's exclusive rulemaking authority by, even indirectly, determining the relevancy of evidence in court proceedings. *Id.* at 9, 409 S.W.3d at 303.

mentioning that *Potts* found "that section 27-34-106 established a rule of substantive law." *Mendoza*, 2016 Ark. 157 at 6, 490 S.W.3d at 302. However, the Arkansas Supreme Court expressed no opinion on *Potts*' holding regarding section 106(a) and did not formally adopt or otherwise recognize *Potts*' holding as law. Plaintiff is correct that *Mendoza* took the time to distinguish the language of Ark. Code Ann. § 27-37-703 from that of Ark. Code Ann. § 27-34-106(a).[6] *See id.* at 7, 490 S.W.3d at 302. However, *Mendoza* did not explain the purpose of that analysis and did not appear to base its holding on the difference between the two statutes. Thus, the Court is not convinced that *Mendoza*'s discussion of section 106(a) is anything other than dicta.

This brings the Court to the issue at hand, for which there seems to be no clear answer found in Arkansas precedent. If a federal court sitting in diversity is confronted with an unresolved issue of state law, it has two options: (1) it may make an "*Erie*-educated guess" as to how the forum state's highest court would rule on the issue or (2) it may certify the question to the state's highest court for resolution. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010). Neither side has provided the Court with on-point Arkansas caselaw analyzing whether section 106(a) runs afoul of the separation-of-powers doctrine and Amendment 80 to the Arkansas Constitution. Rather than make an *Erie*-educated guess, the Court believes for the following reasons that the best course of action is to certify a question to the Arkansas Supreme Court and allow it the opportunity to definitively resolve the issue.

The Court may certify a question to the Arkansas Supreme Court on its own motion or on motion of the parties before it. Ark. Sup. Ct. & Ct. App. R. 6-8(b). Whether to certify a question is within the Court's sound discretion. *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881 (8th Cir. 1996).

---

[6] In short, the Arkansas Supreme Court noted that Ark. Code Ann. § 27-37-703 originally read almost identically to Ark. Code Ann. § 27-34-106(a) but in 1995, "the language 'shall not be considered under any circumstances as evidence of comparative or contributory negligence' and 'with regard to negligence' was removed" from section 27-37-703. *Mendoza*, 2016 Ark. 157 at 7, 490 S.W.3d at 302.

14

The key factor is whether the Court is "genuinely uncertain about a question of state law." *Johnson v. John Deere Co., a Div. of Deer & Co.*, 935 F.2d 151, 153 (8th Cir. 1991). Absent a close question of state law or a lack of state guidance, the Court should determine all the issues before it. *Perkins v. Clark Equip. Co.*, 823 F.2d 207, 209 (8th Cir. 1987). "While judgment and restraint are to be used in deciding whether to certify a question, when the state law is in doubt and touches on public policy concerns that are of particular interest to state law, it is in the best administration of justice to seek further guidance from state courts." *Adams v. Cameron Mut. Ins. Co.*, No. 2:12-cv-02173-PKH, 2013 WL 1876660, at *2 (W.D. Ark. May 3, 2013) (citing *Lickteig v. Kolar*, 2009 U.S. App. LEXIS 29111 at *9 (8th Cir. Sept. 17, 2009)).

The Arkansas Supreme Court has the power to hear questions of law certified to it by a federal court when there is no controlling precedent. Ark. Sup. Ct. & Ct. App. R. 6-8(a)(1). The Arkansas Supreme Court has recognized several benefits of this certification process, which:

> (i) allows federal courts to avoid mischaracterizing state law (thereby avoiding a misstatement that might produce an injustice in the particular case and potentially mislead other federal and state courts until the state supreme court finally, in other litigation, corrects the error); (ii) strengthens the primacy of the state supreme court in interpreting state law by giving it the first opportunity to conclusively decide an issue; (iii) avoids conflicts between federal and state courts, and forestalls needless litigation; and (iv) protects the sovereignty of state courts.

*Longview Prod. Co. v. Dubberly*, 352 Ark. 207, 209, 99 S.W.3d 427, 428 (2003) (quoting *Los Angeles All. for Survival v. City of Los Angeles*, 993 P.2d 334, 338 (Cal. 2000)).

The Arkansas Supreme Court will only accept a certified question when the question of law may be determinative of issues pending before the certifying court, all facts material to the question of law are undisputed, and there are special and important reasons to accept the certification. *Id.* at 210, 99 S.W.3d at 429. "Special and important" reasons include, but are not limited to: (1) a question of law that is one of first impression and is of such substantial public importance as to require a prompt and definitive resolution by the Arkansas Supreme Court; (2) a

15

question of law on which there are conflicting decisions in the courts; (3) a question of law concerning an unsettled issue of the constitutionality or construction of an Arkansas statute. *Id.*

The Court believes that those requirements are satisfied in this instance. As discussed above, the Court is faced with a close question of state law that lacks any on-point, controlling Arkansas precedent.[7] Resolution of the question of law would be determinative of the issue currently pending before this Court. The facts material to the question of law are few and, as discussed earlier in this opinion, are undisputed. The question concerns an unsettled issue regarding the constitutionality of an Arkansas statute, so special and important reasons justify certification of the question. This is doubly so because the Arkansas statute in question arguably intrudes on the Arkansas Supreme Court's exclusive state-court rulemaking power as set out in the Arkansas Constitution. Thus, the Court finds it appropriate to give the Arkansas Supreme Court the first opportunity to conclusively decide the issue.

For these reasons, the Court intends to, on its own motion, issue a certifying order.[8] "If the parties cannot agree upon a statement of facts, the certifying court shall determine the relevant facts and state them as a part of its certification order." Ark. Sup. Ct. & Ct. App. R. 6-8(c)(2). The parties will be given until the close of business on July 27, 2020 to confer and provide the Court with an agreed statement of undisputed facts that are material to the resolution of this issue.

---

[7] *Potts* remains the only case cited by the parties to directly analyze section 106(a). However, that analysis does not square neatly with the analysis required for the current issue. *Potts* only conducted an *Erie* analysis and was not asked to decide whether section 106(a) offended the Arkansas Constitution, likely because when *Potts* was decided, Amendment 80 did not yet exist and the Arkansas Supreme Court did not yet have the sole state-court rulemaking authority in Arkansas. If the Arkansas Supreme Court accepts the certification of this question of law, it might agree with Plaintiffs' position and hold that section 106(a) is substantive for purposes of both *Erie* and separation of powers. However, for the various policy reasons listed above, the Court believes that decision is best made by the Arkansas Supreme Court, not this Court.

[8] The Court recognizes the possibility that Plaintiff might take exception to the fact that this will prolong this case. The Court is cognizant of Plaintiff's right to have her day in court, but nonetheless finds that the public policy concerns discussed above justify certification under these circumstances. Moreover, certifying this question will prejudice Plaintiff less than usual because discovery in this case has been stayed pending the resolution of pending state criminal charges against Separate Defendant Thomas, so this case cannot proceed further until the criminal matter concludes.

If they do not provide the Court with any such statement of facts by that time, the Court will determine the relevant facts on its own and include them in the certification order. *Id.*

## IV. CONCLUSION

For the above-stated reasons, Plaintiff's motion for partial summary judgment (ECF No. 60) is hereby **DENIED**.

The Court intends to, on its own motion, certify a question to the Arkansas Supreme Court regarding whether, under the facts of this case, Ark. Code Ann. § 27-34-106(a) violates the separation-of-powers doctrine under article 4, section 2, and Amendment 80, section 3, of the Arkansas Constitution. The parties are **ORDERED** to confer and provide the Court with an agreeable statement of undisputed facts material to the resolution of this question by the close of business on July 27, 2020. If the parties do not provide the Court with an agreed statement of facts by that time, the Court will determine the relevant facts on its own and include them in the certification order.

**IT IS SO ORDERED**, this 10th day of July, 2020.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge
